UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE OSBORNE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NATIONAL TRUCK FUNDING, LLC,<br>AMERICAN TRUCK GROUP, LLC,<br><br>　　　　Defendants. | No. 2:12-cv-02510-AC<br><br><br>ORDER |

On June 19, 2013, the court held a hearing on defendants' April 29, 2013 motion to dismiss.[1] Plaintiff is a pro se litigant and appeared without representation. Attorney Michael Sawamura appeared on behalf of both defendants. On review of the motion, the documents filed in support and opposition, and upon hearing the arguments of plaintiff and counsel, THE COURT FINDS AS FOLLOWS:

////

////

////

////

---

[1] This matter is proceeding before the undersigned based on the consent of the parties. See ECF Nos. 9, 15.

1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A. Facts Underlying Litigation[2]

Plaintiff's claims arise from her lease and financing of a 2008 Volvo 780 truck from defendants American Truck Group, LLC ("ATG") and National Truck Funding, LLC ("NTF"). The allegations of the complaint involve three distinct factual scenarios.

1. Lease and Financing of Truck

Plaintiff alleges ATG solicited her business in California, negotiated with her here, and entered into a preliminary contract here. Compl. 2. On February 4, 2012, plaintiff leased a truck from defendant ATG, and financed the purchase through defendant NTF.[3]

2. Transportation Violation in Arizona

While driving the truck from Mississippi to California on February 7, 2012, plaintiff alleges that she was stopped by Arizona authorities because she lacked adequate license, registration, and tags for the truck. Compl. 3. Plaintiff was cited by Arizona authorities for lacking registration and for driving on an Arizona roadway in an unregistered vehicle. Id. In order to proceed to California, plaintiff was forced to pay the necessary fees to temporarily register the truck in Arizona. Id. On February 17, 2012, plaintiff received temporary plates and registration in order to operate the truck in California. Id. 3-4.

"Several days" after being stopped in Arizona, plaintiff complained to Mississippi authorities about NTF. Compl. 3. Then, on February 18, 2012, she contacted NTF, informing it that the contract had been breached for NTF's failure to provide adequate license, registration, and tags. Id. 4. Plaintiff requested arbitration, which NTF refused. Id. She then sued in California state court, a suit which was dismissed pursuant to plaintiff's request for dismissal. Opp'n Ex. E, at 2-3.

---

[2] Throughout the complaint plaintiff refers to defendants in the plural form, usually without differentiating which allegation is set forth against which defendant. While the court is not always certain which entity is being referred to by plaintiff, the analysis is unaffected.

[3] Plaintiff's complaint says that the truck was "purchased" on February 7, 2012. Compl. 2. However, the agreement is for a "Commercial Truck Rental" and was signed on February 4, 2012. E.g., Compl. Ex. A, at 1.

2

3. Repossession of the Truck in Oregon

Plaintiff alleges that NTF repossessed the vehicle on March 14, 2012, even though she had sent an email and fax to NTF the previous day containing a "preliminary injunction/ restraining order."[4] Compl. 4. On March 14, 2012, two men approached plaintiff's driver, Melvin Sanford, in Oregon. Id. The two men told Mr. Sanford that plaintiff had consented to the repossession of the vehicle, providing forged documents that seemed to validate their claim. Id. 5. Mr. Sanford contacted plaintiff on the phone and, after discussing the matter with her, told the men that the documents were forged and that plaintiff was calling the police. Id. The two men then pulled a gun on Mr. Sanford, who struggled with them and "broke his fingers in the struggle." Id. 5-6. The men took the truck. Id. Criminal charges were filed the next day. Id. 6.

B. Additional Facts Alleged in Plaintiff's Opposition

Plaintiff asserts additional allegations in her opposition, although the memorandum was submitted without an affidavit or declaration signed under penalty of perjury. Plaintiff alleges that on December 18, 2011, ATG sales representative "Brandy" contacted her with a proposition to lease a commercial semi-truck, a 2008 780 Volvo, with the option to purchase. Pl.'s Opp'n to Mot. to Dismiss. ("Opp'n") 2. On December 21, 2011, plaintiff wired $495.00 from California to ATG in order to "start the prequalification process." Id. On December 24, 2011, she sent ATG an application and prequalification letter, to which ATG replied with several more document requests. Id. Plaintiff sent the requested documents, and both she and ATG subsequently agreed to the terms and conditions of the contract. Id. Plaintiff maintains that "No business transaction other than the retrieval [of the truck] took place outside of CA," and that she would not have spent money and time on the purchase and transportation of the truck from Mississippi had an agreement not already been in place. Id. 3-4. She also alleges that she had conversations with multiple California customers in ATG's sales office. Id. 6.

////

---

[4] Although plaintiff claims to have "officially served" NTF with this document, the attachment merely shows a "Request for Civil Harassment Restraining Orders." Compl. 1 Ex. C, at 9. At the bottom, this document clearly states that it "is not a Court Order." Id.

C. Procedural Background

1. State Court Action

On April 23, 2012, plaintiff filed a civil complaint against NTF and ATG in the Sacramento County Superior Court. Decl. in Supp. of Defs.' Mot. to Dismiss ("Sawamura Decl.") Ex. A, at 1.[5] In July 2012, plaintiff submitted a request for dismissal without prejudice. Opp'n Ex. E, at 2-3. This filing was never entered into the docket. Id. Defendants filed a motion to quash service of summons based on lack of personal jurisdiction. Sawamura Decl. Ex. B, at 1-4. Plaintiff then filed a second request for dismissal without prejudice in August 2012. Opp'n Ex. E, at 2. On September 4, 2012, the court granted defendants' motion to quash as unopposed, id., and on September 26, 2012, the action was dismissed with prejudice, Sawamura Decl. Ex. B, at 1-4. On January 14, 2013, however, the court vacated this ruling pursuant to plaintiff's second request for dismissal, which it found should have been addressed before defendant's motion to quash. Opp'n Ex. E, at 2-3. The action was then dismissed without prejudice pursuant to plaintiff's request.

2. Federal Court Action

On October 9, 2012, plaintiff filed her complaint against ATG and NTF in federal court, alleging breach of contract and various torts (fraud, intentional infliction of emotional distress, libel, conversion, and negligence). Compl. 11.

Plaintiff alleges three causes of action against ATG: (1) fraud, contending it leased her the truck with the intent to repossess and resell the vehicle; (2) breach of contract because ATG failed to "provide adequate insurance, proper registration and operational documents"; (3) conversion due to ATG depriving her of the use of her deposit. Compl. 7-9.

Plaintiff alleges six causes of action against NTF: (1) fraud, because it leased her a vehicle with improper registration, tags, and license, and it created "bogus documents" to recover the vehicle; (2) breach of contract because NTF failed to "provide adequate insurance, proper registration and operational documents" and because it engaged in the unlawful recovery of the

---

[5] The court takes judicial notice of the documents referenced herein. Sawamura Decl. 2 n.1.

vehicle; (3) intentional infliction of emotional distress from the unlawful taking of the vehicle and causing her creditors to send false reports to credit agencies; (4) defamation because NTF caused her to default on financial obligations, which caused creditors to send false credit reports to credit agencies; (5) conversion due to NTF depriving her of the use of the vehicle; and (6) professional negligence because NTF's behavior fell below the duty of care expected from those in their profession. Compl. 6-10.

On April 29, 2013, defendants filed the instant motion to dismiss for lack of personal jurisdiction and improper venue. ECF No. 18.

On June 6, 2013, plaintiff filed an opposition. ECF No. 24. Plaintiff did not support her opposition with an affidavit or declaration signed under penalty of perjury.

On June 11, 2013, defendants filed their reply. ECF No. 25.

## LEGAL STANDARDS

A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) prevents a district court with a "lack of jurisdiction" over defendants from exercising its power over them. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). When the court decides the issue of jurisdiction without an evidentiary hearing, based only on affidavits and discovery materials, a "plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." Myers v. Bennett Law Offices, 238 F.3d 1068, 1071 (9th Cir. 2001) (citing Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977)).

The prima facie showing is achieved by producing admissible evidence which, if believed, would sufficiently establish personal jurisdiction. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). Accordingly, the court accepts uncontroverted facts in the complaint as true. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). Jurisdictional facts cannot, however, be established by nonspecific, conclusory statements. Butcher's Union Local No. 498,

United Food & Commercial Workers v. SDC Inv., Inc., 788 F.2d 535, 540 (9th Cir. 1986) (citing Kaylor v. Fields, 661 F.2d 1177, 1182-83 (8th Cir. 1981) (although liberally construed, the complaint "must contain something more than mere conclusory statements that are unsupported by specific facts")). Additionally, plaintiff cannot solely rely on allegations in the complaint when they have been challenged by affidavit, Taylor v. Portland Paramount Corp., 383 F.2d 634, 639 (9th Cir. 1967), although conflicts between affidavits are resolved in plaintiff's favor, Mavrix, 647 F.3d at 1223.

To determine whether plaintiff has shown personal jurisdiction when no federal statute governs such jurisdiction, the court applies the law of the state in which it sits. See generally Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). Because no federal law controls personal jurisdiction in this matter, the court applies the law of California. 28 U.S.C. § 1652; Schwarzenegger, 374 F.3d at 800; see also Fed. R. Civ. P. 4(k)(1)(A). California's long-arm statute permits personal jurisdiction up to the U.S. Constitution's due process limits. Cal. Civ. Proc. Code § 410.10. The only question is whether the constitutional due process standard is met, because "the jurisdictional analyses under state law and federal due process are the same." Schwarzenegger, 374 F.3d at 800-01.

Due process allows the exercise of personal jurisdiction over an out-of-state-defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see also Ziegler v. Indian River Cnty., 64 F.3d 470, 473 (9th Cir. 1995). Depending on the type and breadth of a defendant's contacts with the forum, jurisdiction may be either general or specific to the claim. Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991).

B. Venue

Venue is "the geographic specification of the proper court or courts for the litigation of a civil action." 28 U.S.C. § 1390. When a case is brought in an improper venue, a defendant may move to dismiss. Fed. R. Civ. P. 12(b)(3). 28 U.S.C. § 1406(a). In diversity suits, venue in a

civil action is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b). Venue is also proper in any district where any defendant resides, if all defendants reside in the same State. Id. Corporations reside in any district where they are subject to personal jurisdiction at the time the action commences. 28 U.S.C. § 1391(c)(2).

The court considers facts outside of the pleadings to determine proper venue. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). If venue is proper, a case may nonetheless be transferred to any other district in which it might have been brought or to which all parties have consented "[f]or the convenience of parties and witnesses," "in the interest of justice." 28 U.S.C § 1404. In order to do this, there must be a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal Co. v. Commw. Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

## ANALYSIS

Defendants move to dismiss the complaint for lack of personal jurisdiction and improper venue. Alternatively, they move for transfer to a more convenient venue. For the reasons set forth here, the undersigned will grant defendants' motion to dismiss.

A. Personal Jurisdiction

A defendant's contacts with a forum may be either general or specific to the claim, depending on the type and extent of those contacts. Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991).

1. General Jurisdiction

The first question is whether personal jurisdiction may be exercised over the defendants on the basis of general jurisdiction. In the context of a corporation, general jurisdiction is established when a defendant's contacts with a state are so continuous and systematic they are essentially at home in the state. Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). These continuous and systematic contacts with a state allow the court to

exercise general jurisdiction over defendants on causes of action which are "entirely distinct" from the acts which conferred jurisdiction. Id. at 2853. Thus, a corporation must "approximate physical presence" by making itself "at home." Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1169 (9th Cir. 2006). "[A] defendant must not only step through the door, it must also 'sit down and make itself at home.'" See id. (quoting Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1125 (9th Cir. 2002)). Contacts such as a "long-established presence," generation of "substantial revenue" from a state, and having "many in-state consumers" have all been used to establish general jurisdiction. Id.

### a. General Jurisdiction as to ATG

ATG contends that general jurisdiction is lacking because it has no systematic and continuous contact with California. Mem. MTD 7-8. It claims it is a Nevada entity and has its principal place of business in Mississippi. Sawamura Decl. Ex. C, at 1-2. It has no office, real estate, property, bank accounts, or professional ties with California, and has never been required to pay taxes here. Sawamura Decl. 3. It contends that the purchase, contract signing, financing, and payment of deposit for the truck all occurred in Mississippi, as did pick-up and acceptance of delivery. Id. 4.

In her complaint, plaintiff alleges ATG "solicited business in the State of California and the preliminary contract was signed" here. Compl. 2. She also alleges "[a]ll negotiations . . . were held in California." Id. The court finds these allegations conclusory since they assert no specific facts and are, therefore, insufficient to properly establish general jurisdiction. See Butcher's Union, 788 F.2d at 540.

Even if plaintiff's contentions were not conclusory, she has not made out a prima facie case for general jurisdiction. Simply soliciting an agreement in a state does not confer general jurisdiction, nor does making telephone calls or sending letters. Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1331 (9th Cir. 1984). ATG also has no place of business in the forum, a typical factor in finding approximate physical presence. See id. Although a lease may appear to create an ongoing obligation in California, the agreement merely represents ATG doing business with a

California resident, not doing business in California.  See Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000), holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199 (9th Cir. 2006).

Plaintiff does make additional allegations in her opposition, which as noted was unaccompanied by an affidavit or declaration signed under penalty of perjury.  Plaintiff claims that ATG contacted her on December 18, 2011 with an offer to lease the truck.  Id. 2.  She further alleges that an agreement was entered in California prior to plaintiff's trip to Mississippi, and that she had conversations with multiple California customers in ATG's sales office.  Id. 6.  However, plaintiff's opposition is inadmissible as evidence and therefore will not be considered.  See Beyene, 854 F.2d at 1181-82; see also L.R. 230(h).  Despite the leniency granted pro se litigants, trial courts do not inject themselves into the adversary process on behalf of one party.  Jacobsen v. Filler, 790 F.2d 1362, 1354 (9th Cir. 1986).  Trial courts do not intervene when a lawyer fails to file opposing papers and litigants who represent themselves "should be treated no differently."  Id. at 1364-65.  Therefore, the court cannot consider plaintiff's opposition in making its jurisdictional determination.

Because plaintiff has failed to make out a prima facie case, the court finds that general jurisdiction is lacking over ATG.

### b. General Jurisdiction as to NTF

NTF also contends that general jurisdiction is lacking because it has no systematic and continuous contact with California.  Mem. MTD 7-8.  It claims it is a Nevada entity with its principal place of business in Mississippi.  Sawamura Decl. Ex. C, at 1-2.  It has no office, real estate, property, bank accounts, or professional ties with California, and has never been required to pay taxes here.  Sawamura Decl. 3.  It also contends that the purchase, contract signing, financing, and payment of deposit for the truck all occurred in Mississippi, as did pick up and acceptance of delivery.  Id. 4.

Plaintiff's only allegations in regards to NTF's general jurisdictional contact with California is that it did business with a California resident, her.  Compl. 2.  Plaintiff states no

further allegations against NTF in her opposition which support general jurisdiction. Doing business with one resident, however, is akin only to "step[ping] through the door," not "sit[ting] down and mak[ing] [one]self at home." Tuazon, 433 F.3d at 1169. This contact is therefore insufficient to allow the exercise of general jurisdiction over NTF in California.

### 2. Specific Jurisdiction

The court next considers whether it may exercise personal jurisdiction over defendants on the basis of specific jurisdiction. Specific jurisdiction, unlike general jurisdiction, requires a defendant have sufficient, specific contact with the state. Goodyear, 131 S. Ct. at 2851. This second basis gives the court jurisdiction "arising out of or related to" the defendants' contacts with California. See Burger King, 471 U.S. at 473. A court has specific jurisdiction when defendants (1) purposefully direct their activities or consummate some transaction with the forum or resident, or they purposefully avail themselves of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. Schwarzenegger, 374 F.3d at 802. The plaintiff must prove the first two prongs, but the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. Burger King, 471 U.S. at 477.

#### a. Purposeful Availment

"This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King, 471 U.S. at 475 (citations and internal quotations omitted). Purposeful availment is analyzed differently for contracts than for torts. Schwarzenegger, 374 F.3d at 802. The court uses standard purposeful availment for contracts, and it uses purposeful direction analysis for torts. Id.

##### i. Standard Purposeful Availment

Regarding plaintiff's contract claims, purposeful availment is satisfied when a defendant completes a transaction in the forum, such as delivering goods or executing a contract. Yahoo!

10

Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006). The focus is on whether deliberate actions were taken within the forum state or continuing obligations were created with forum residents. Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478 (9th Cir. 1986) (citing Burger King, 471 U.S. at 475).

### 1. Standard Purposeful Availment as to ATG

ATG acknowledges that it conducted business with one California resident, plaintiff. Sawamura Decl. 10. However, it contends it could not have anticipated litigation in California because it did not direct business activities to California. Id. 5-6. It also contends that this action arises out of events that occurred exclusively outside of California, so the dispute did not arise from contact with the forum state. Id. 10-11.

In the complaint, plaintiff alleges breach of contract because ATG failed to "provide adequate insurance, proper registration and operational documents." Compl. 7-8. Although she leased a truck from ATG in Mississippi, she asserts ATG solicited her business in California and the preliminary contract was signed here. Id. 2. She also alleges that negotiations between herself and ATG were held in California. Id. Plaintiff presents no specific facts to support her allegation, saying simply "the preliminary contract was signed in California," and "all negotiations . . . were held in California." Id. These allegations are conclusory and cannot, without more, establish specific jurisdiction. See Butcher's Union, 788 F.2d at 540.

In her opposition, plaintiff claims that ATG contacted her on December 18, 2011 with an offer to lease the truck. Opp'n 2. She further alleges that an agreement was entered into in California prior to plaintiff's trip to Mississippi. Id. These allegations, however, are not presented in an affidavit and for reasons previously discussed, the court does not consider plaintiff's opposition in making its jurisdictional determination. Part III.A.1.

Consequently, the undersigned considers only ATG's contentions. Its contention that all events occurred outside of California necessitate that ATG completed the transaction outside of the forum. Therefore, the court finds standard purposeful availment has not been satisfied as to ATG.

11

2.   Standard Purposeful Availment as to NTF

NTF acknowledges that it conducted business with one California resident, plaintiff. Sawamura Decl. 10.  But it contends that it could not have anticipated litigation in California because it did not direct business activities to California.  Id. 5-6.  It also contends that this action arises out of events that occurred exclusively outside of California, so the dispute did not arise from contact with the forum state.  Id. 10-11.

Plaintiff's allegation as to NTF is that it financed plaintiff's lease of the truck.  See e.g., Compl. 2.  No additional allegations are put forth in her opposition as to NTF's standard purposeful availment.

A "contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts to support personal jurisdiction." Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001); Boschetto v. Hansing, 539 F.3d 1011, 1017 (9th Cir. 2008).  Generally, a combination of solicitation, negotiation, and transaction of business are used to fulfill purposeful availment. See Decker, 805 F.2d at 840 (purposeful availment of Montana when negotiations took place in Nebraska, but the contract required delivery to Montana).  Here, there is no evidence that NTF purposefully availed itself specifically to the business of Californians or took advantage of California law in anyway.  For this reason, the undersigned finds that NTF has not purposefully availed itself of California's laws.

ii.   Purposeful Direction

As to plaintiff's tort claims, purposeful availment may be satisfied by an "effects" test that focuses on the forum in which the defendant's actions were felt, even if the acts did not occur within the forum.  Yahoo!, 433 F.3d at 1206.  See Schwarzenegger, 374 F.3d at 803 (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)).  The effects test is satisfied when a defendant commits an intentional act that is expressly aimed at and causes harm the defendant knows is likely to be suffered in the forum state.  Yahoo!, 433 F.3d at 1206.

///

////

### 1. Intentional Act

Neither defendant has contested the alleged intentional acts by affidavit. The unopposed facts in plaintiff's complaint are therefore taken as true. Mavrix, 647 F.3d at 1223.

Plaintiff alleges that ATG leased the vehicle to her, intending to unlawfully repossess it. Compl. 7. She also alleges that ATG falsely promised to provide adequate insurance, proper registration, and operational documents, but never actually intended to do so. Id. 7-8. She claims ATG falsely led her to believe it had provided her with a $1 million insurance policy to operate the vehicle, but later discovered the policy only applied when the vehicle was not in operation. Id.[6]

Plaintiff alleges that NTF financed the lease through NTF, and NTF intended to unlawfully repossess it. Id. 7. Plaintiff next alleges that NTF falsely promised to provide adequate insurance, proper registration, and operational documents, but never actually intended to do so. Id. 7-8. She claims it falsely led her to believe it had provided her with a $1 million insurance policy to operate the vehicle, but later discovered the policy only applied when the vehicle was not in operation. Id. Plaintiff also alleges the "unlawful recovery of the vehicle" by NTF. Id. 8.

An intentional act is "an intent to perform an actual, physical act in the real world." Schwarzenegger, 374 F.3d at 806. The court finds that ATG committed intentional acts by leasing the vehicle, making promises concerning the registration and insurance. The court finds that NTF also committed intentional acts by financing the lease, making promises concerning the registration and insurance, and repossessing the vehicle.

### 2. Harm

The harm element is satisfied if "defendant's intentional act has foreseeable effects in the forum." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1131 (9th Cir. 2010) (internal quotations omitted). The harm need not have been caused by wrongful acts since "a

---

[6] Plaintiff also alleges that ATG failed to return her deposit. Compl. 8. This is really a failure to act, defying the requirement that defendants commit an "actual, physical act in the real world." Schwarzenegger, 374 F.3d at 806.

13

holding on the merits that the act was not wrongful would deprive the court of jurisdiction." Id. Plaintiff alleges that she suffered harm as a foreseeable effect of defendants' intentional acts, including the abandonment of $65,000 of freight, damage to her reputation, and the inconvenience and fees incurred from the incident in Arizona. Compl. 3, 9. These facts are unopposed by defendants' affidavits and are therefore taken as true. Mavrix, 647 F.3d at 1223. The undersigned finds that these allegations satisfy the harm element.

### 3. Express Aiming

Finally, "[t]he express aiming prong of the *Calder*-effects test presents a more difficult question." Fiore v. Walden, 688 F.3d 558, 577 (9th Cir. 2012), cert. granted, 133 S. Ct. 1493 (2013) (internal quotation omitted). Express aiming is established if a defendant individually targeted a forum resident by taking action "outside the forum state for the purpose of affecting a particular forum resident or a person with strong forum connections." Fiore, 688 F.3d at 577. But "the express aiming requirement is not satisfied where it is merely foreseeable that there will be an impact on individuals in the forum." Id. The distinction "is often the difference between an *intended* impact that is either local or undifferentiated, and an *intended* impact that is targeted at a known individual who has a substantial, ongoing connection to the forum." Id. at 578 (citing Bancroft, 223 F.3d at 1088) (internal quotation omitted) (emphasis original). For example, a passive website viewed by forum residents does not satisfy the express aiming requirement because there is no "individualized targeting" in maintaining the website. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1156-57 (9th Cir. 2006). Also, an Ohio car dealership's unauthorized use of Arnold Schwarzenegger's likeness in local advertisements lacked express aiming at California because the defendant intended the ads to have only local effects. Schwarzenegger, 374 F.3d at 807. In Brayton, on the other hand, the defendant individually targeted plaintiff by "making commercial use of" plaintiff's copyrighted material *for the purpose* of competing with plaintiff. Brayton, 606 F.3d at 1129. Additionally, a defendant individually targeted plaintiffs when he knew of their significant connection to Nevada and of the likely impact his defrauding actions would have on their property and business in Nevada. Fiore, 688 F.3d at 581.

14

### a. ATG's Express Aiming

While ATG acknowledges that it conducted business with one California resident, plaintiff, Sawamura Decl. 10, it contends it could not have anticipated litigation in California because it did not direct business activities to California, id. 5-6. ATG argues that the agreement was entered into in Mississippi, not California, and that the agreement requires disputes to be decided by arbitration in Mississippi. Id. 10.

Plaintiff alleges fraud against ATG, contending it leased the truck with the intent to repossess and resell the vehicle. Compl. 7. She generally alleges a scheme in which ATG leased the vehicle with the purpose of unlawfully getting it back and profiting from it again. Id. However, she simply concludes this to be the case without providing specific facts. Although fraud targeted at someone with substantial ties to a forum normally meets the express aiming factor, Fiore, 688 F.3d at 580, plaintiff's allegations are conclusory and inadequate to support the exercise of personal jurisdiction. See Butcher's Union, 788 F.2d at 540.

Plaintiff also alleges conversion due to ATG depriving her of the use of her funds. Compl. 9. She further alleges breach of contract because ATG failed to provide adequate insurance, registration, and operational documents. Id. 8. These do not allege any action taken "*for the purpose* of affecting" plaintiff. See Fiore, 688 F.3d at 577 (emphasis added). Without alleging how ATG's conversion and breach of contract was performed for the purpose of affecting her, the express aiming factor is not met.

In her opposition, plaintiff asserts that ATG committed civil wrongs against her. Opp'n 7. She also contends that ATG has done business with other California customers. Id. However, as discussed, the court cannot consider plaintiff's opposition as evidence. See Beyene, 854 F.2d at 1181-82; see also L.R. 230(h).

For these reasons, the undersigned concludes that ATG's acts did not satisfy the express aiming factor.

////
////

### b. NTF's Express Aiming

While NTF acknowledges that it conducted business with one California resident, plaintiff, Sawamura Decl. 10, it contends it could not have anticipated litigation in California because it did not direct business activities to California, id. 5-6. NTF argues that the agreement was entered into in Mississippi, not California. Id. 10. It also argue that the agreement requires disputes be decided by arbitration in Mississippi. Id.

Plaintiff first alleges fraud against NTF because it intended to repossess the vehicle when it financed the lease, provided plaintiff with improper registration, tags, and license, and created "bogus documents" to recover the vehicle. Compl. 6-7. She generally alleges a scheme wherein NTF financed the vehicle's lease with the purpose of unlawfully getting it back and profiting from it again. Id. However, she simply concludes this to be the case without providing factual support. Although fraud targeted at someone with substantial ties to a forum normally meets the express aiming factor, Fiore, 688 F.3d at 580, plaintiff's allegations are conclusory and inadequate to support the exercise of personal jurisdiction. See Butcher's Union, 788 F.2d at 540.

Plaintiff then alleges: (1) breach of contract because NTF failed to "provide adequate insurance, proper registration and operational documents" and because it engaged in the unlawful recovery of the vehicle; (2) intentional infliction of emotional distress against NTF from the unlawful taking of the vehicle and causing her creditors to send false credit reports to credit agencies; (3) defamation against NTF because it caused her to default on financial obligations, which caused creditors to send false credit reports to credit agencies; (4) conversion due to NTF depriving her of the use of the vehicle; (5) and professional negligence because NTF's behavior fell below the duty of care expected from those in their profession. Id. 7-10. These claims do not allege any action taken "*for the purpose* of affecting" plaintiff. See Fiore, 688 F.3d at 577 (emphasis added). Without alleging how NTF's acts were performed for the purpose of affecting her, the express aiming factor is not met.

In plaintiff's opposition, she contends that NTF "committed both a civil and criminal act against the plaintiff in several other states." Opp'n 7. She also contends that NTF has done

business with other California customers.  Id.  Again, however, the court cannot consider plaintiff's opposition as evidence.  See Beyene, 854 F.2d at 1181-82; see also L.R. 230(h).

For these reasons, the undersigned concludes that NTF's acts have not satisfied the express aiming factor.[7]

In summary, the undersigned holds that plaintiff has failed to assert sufficient facts to establish the court's personal jurisdiction over either defendant.  Therefore, defendants' motion to dismiss must be granted.  This does not end the court's inquiry, however, because the allegations included in plaintiff's opposition suggest that plaintiff may be able to establish personal jurisdiction over one of the defendants—ATG—in an amended complaint.  There is no basis for a conclusion that plaintiff could establish this court's jurisdiction over NTF by amendment, on the other hand.  NTF must be dismissed for lack of personal jurisdiction since plaintiff has failed to assert any facts as to that entity that would "not offend traditional notions of fair play and substantial justice."  See Int'l Shoe, 326 U.S. at 316.

If venue were proper in this court and if plaintiff wished to proceed here, she could do so against ATG only.  Plaintiff would have to either abandon her claims against NTF or pursue them in a separate lawsuit filed in the Southern District of Mississippi.  Accordingly, rather than addressing the possibility of amendment, the court now turns to defendants' request for a transfer of venue.

B.  Transfer for Convenience

Defendants move to transfer for convenience to the United States District Court for the Southern District of Mississippi, in Gulfport, Mississippi.  Defendants contend that adjudication there would expend fewer resources and would be in the interests of justice.  Mem. MTD 13.

When venue is proper[8], a case may be transferred to another district where venue is also proper for the "convenience of parties and witnesses," and in the "interest of justice."  28 U.S.C. § 1404.  Only a "strong showing of inconvenience" will upset "plaintiff's choice of forum."

---

[7] Because neither ATG nor NTF satisfied the broad purposeful availment test, the court need not consider if plaintiff's harm arose from their actions or whether the exercise of jurisdiction is reasonable.

[8] The court assumes for the purpose of this motion that venue is proper.

17

Decker, 805 F.2d at 843. There exist nine factors for the court to balance when considering transfer, four of which are for the convenience of the parties and five of which are for the public interest. The four private convenience factors are (1) the ease of access to evidence, (2) the ability to compel unwilling witnesses, and minimize cost, (3) the chance to view the premises if view is appropriate, (4) and all other considerations that make trial of a case easy, expeditious, and inexpensive. Id. (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). The five public factors are (5) the administrative difficulties from court congestion, (6) the "local interest in having localized controversies decided at home," (7) the interest in conducting diversity cases in a forum that is at home with the law governing the action, (8) the avoidance of unnecessary conflict of laws, or in the application of foreign law, (9) and the unfairness of burdening an unrelated forum's citizens with jury duty. Id. The court must balance these factors with "plaintiff's choice of forum." Id.

The court has considered all nine factors, finds that none favor California, and concludes that transfer to the Southern District of Mississippi is proper. Turning first to the private convenience factors, the first three factors do not weigh in favor of either forum: (1) access to evidence will be equal in either forum since both forums contain some evidence; (2) there are witnesses in both forums; and (3) an examination of premises is irrelevant to the nature of this suit. The fourth factor, however, weighs heavily in Mississippi's favor: making trial easier. The simple fact is that this case will proceed faster in Mississippi because that court carries fewer cases than the Eastern District of California, making it easier and less expensive. As has been extensively documented, the Eastern District of California is much more congested than practically any other court in the country, including the Southern District of Mississippi. As of March 2012, the Eastern District of California had 8,208 cases pending, with nine district judges, both senior and active, while the Southern District of Mississippi had 2,136 cases pending, with ten district judges. See U.S. District Courts, Caseload Statistics 2012, Tables C and D, available at http://www.uscourts.gov/Statistics/FederalJudicialCaseloadStatistics/FederalJudicialCaseloadStatistics2012.aspx; see also Meyer Mfg. Co. Ltd. v. Telebrands Corp., CIV. S-11-3153 LKK, 2012

WL 1189765 (E.D. Cal. Apr. 9, 2012) (citing the Caseload tables for evidence that California's Eastern District is more heavily burdened than that of the District of New Jersey, and transferring the case there). Additionally, since the court does not have personal jurisdiction over NTF and because the two entities are closely linked together[9] (they share the same president), it would benefit plaintiff greatly to conserve her resources and proceed against the two entities in the same suit.

Next, the undersigned turns to consideration of the public factors. First, as discussed, it is evident that transfer to Mississippi would ease administrative burdens on this already over-burdened court. Second, California does not have a "local interest" because none of plaintiff's allegations establish that the controversy is localized. Moreover, since the agreement entered into between plaintiff and NTF establishes that Mississippi law is to be applied to "any claim, dispute, or controversy,"[10] and that the agreement "shall also extend to American Truck Group, LLC," Linsday Decl., Ex. A at 6, the seventh factor (the interest in conducting diversity cases in a forum that is at home with the law governing the action) and the eighth factor (the avoidance of unnecessary conflict of laws, or in the application of foreign law) weigh in favor of Mississippi. The judicial system favors "having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." Van Dusen v. Barrack, 376 U.S. 612, 645 (1964) (quoting Gulf Oil Corp., 330 U.S. at 509). Finally, the ninth factor weighs in favor of Mississippi since it would be unfair to burden this state's citizens with jury duty in an action involving claims that arose in different states and involving laws of a foreign jurisdiction.

In sum, all factors other than plaintiff's preference are neutral or favor transfer. The showing of inconvenience is sufficiently strong "to warrant upsetting the plaintiff's choice of forum." Decker, 805 F.2d at 843. Accordingly, the undersigned would order the action

---

[9] In fact, plaintiff herself seems to refer to defendants in the plural form, usually without differentiating her allegations against the two defendants.

[10] The court notes that defendants have not invoked their arbitration agreement with plaintiff, despite the seeming existence of one, and the fact that "Both parties hereby waive their right to litigation." Lindsay Decl., Ex. A at 8.

19

transferred to Mississippi even if plaintiff could establish this court's personal jurisdiction over ATG and was willing to proceed here against ATG only.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that:

1. Defendants' motion to dismiss is granted;

2. This action is transferred to the United States District Court for the Southern District of Mississippi.

DATED: July 26, 2013

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/jb_mb;osbo2510.mtd